IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT ESTHER, <br> No. M23445, <br><br> Plaintiff, <br><br> vs. <br><br> C/O REX FITCH, <br> G. DELLINGER, <br> C/O BOYER, <br> C/O CRUMIN, <br> C/O WEBER, <br> COUNSELOR RAY, <br> MS. SMITH, <br> LT. GINDER, <br> NURSE JANE DOE #1, <br> DR. JAMES COE, <br> WEXFORD HEALTH SERVICES, and <br> D. DOHNSON, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 15-cv-01010-SMY <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Robert Esther is an inmate currently housed in Lawrence Correctional Center. Pursuant to 42 U.S.C. § 1983, Plaintiff brings this action for deprivations of his constitutional rights stemming from an altercation with correctional officers.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief

may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

According to the complaint, on June 4, 2015, C/O Rex Fitch, C/O Boyer, C/O Crumin, C/O Weber and Lt. Dellinger were involved in a "compliance check" of Plaintiff's cell. Although Plaintiff "passed," C/O Fitch proceeded to search through Plaintiff's property box, which contained food Plaintiff had purchased. Fitch announced that he was going to take some of Plaintiff's food, because he, Fitch, was an officer. When Plaintiff protested and bent down to pick up items that had been tossed to the floor, Fitch, without provocation, physically attacked Plaintiff by kicking and punching him in the back, ribs and face. Lt. Dellinger, C/O Boyer, C/O Crumin and C/O Weber stood by watching. When Plaintiff called to Lt. Dellinger to stop the attack,

Dellinger merely turned and walked away. According to the complaint, Lt. Dellinger, along with Lt. Ginder, who is described as being in charge of segregation, are liable for allowing the beating to occur pursuant to a policy or practice implemented and overseen by Ginder.

After the attack, Plaintiff was escorted directly to segregation by C/O Crumin and C/O Boyer, who were supervised by Lt. Ginder. Plaintiff complains that he was not taken to the healthcare unit, where a nurse could make a report of his injuries (bruising and swelling). Rather, as a result of a conspiracy, Lt. Ginder fabricated a disciplinary report against Plaintiff and falsely indicated that Plaintiff had refused medical care. Ginder explained to Plaintiff that correctional officers "stick together."

Six weeks later, on July 15 2015, after multiple requests for x-rays and pain medication went unanswered, Plaintiff filed an emergency grievance. Plaintiff indicates that he is suing Wexford Health Service, the prison healthcare provider, and "the HCCA, Don, as well" for not complying with his requests (Doc. 1. p. 8). It is further alleged that Dr. Coe delayed care, did not provide pain relief, and did not send Plaintiff to a specialist.

On July 15 2015, another grievance was filed regarding the June 4 assault. According to the complaint, Counselor Ray threw away many of Plaintiff's grievances and threatened Plaintiff in order to deter him from pursuing his grievances—all interfering with Plaintiff's ability to exhaust administrative remedies. It is further asserted that the warden (who is not a named defendant) did not investigate. Plaintiff

seeks compensatory and punitive damages, as well as injunctive relief aimed at ensuring Illinois Department of Corrections personnel do not cause him more injuries.

## Discussion

The complaint states that Eighth Amendment claims regarding the use of excessive force and the denial of medical treatment are intended, along with a Fourteenth Amendment challenge to Plaintiff's confinement in segregation (Doc. 1, p. 6). Although at least one viable Eighth Amendment claim is stated, for the reasons that follow, the bulk of the allegations, as pleaded, fail to present colorable constitutional claims and must be dismissed.

## Personal Involvement

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). The narrative of the complaint does not mention Defendants Ms. Smith, Nurse Jane Doe #1 or D. Johnson. Merely naming a defendant in the caption is insufficient to state a claim. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Accordingly, Ms. Smith, Nurse Jane Doe #1 and D. Johnson are each dismissed without prejudice.

## Conspiracy

The complaint does not adequately plead a conspiracy among any of the 12 defendants. Claims of conspiracy necessarily require a certain amount of factual underpinning to survive preliminary review. *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Sow v. Fortville Police Dept.*, 636 F.3d 293, 304–05 (7th Cir. 2011). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id*. at 305 (quoting *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir.1999)).

The fact that there may have been joint action in the events that occurred in Plaintiff's cell, and that other defendants were involved after the fact relative to healthcare, the issuance of a disciplinary report, etc., do not establish a conspiracy. Even Ginder's comment that officers stick together is insufficient to lay a foundation for a conspiracy claim. Any and all conspiracy allegations, therefore, fail and should be considered dismissed without prejudice.

## Property Claims

Insofar as Plaintiff alleges that C/O Fitch took his food (while other defendants looked on), no viable constitutional claim is stated. This allegation would normally be framed as a Fourteenth Amendment due process violation, but it cannot be brought

under Section 1983 because the state provides an adequate remedy. *See Hudson v. Palmer,* 468 U.S. 517, 530–36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *See Turley v. Rednour*, 729 F.3d 645, 653 (7th Cir. 2013); *Murdock v. Washington,* 193 F.3d 510, 513 (7th Cir.1999). Any and all intended due process claims regarding the taking of Plaintiff's personal property, therefore, are dismissed without prejudice.

## **The Denial of Healthcare**

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment. U.S. CONST., amend. VIII. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Prison officials can violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A medical condition need not be life-threatening to be serious; rather, it can be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

Plaintiff clearly wants to pursue an Eighth Amendment claim based upon a denial of medical care, but the complaint fails to adequately present such a claim. For example, there is no indication that Plaintiff asked Fitch, Boyer, Crumin, Weber or

Dellinger for medical care following the incident in Plaintiff's cell, or that a reasonable person would have assumed Plaintiff had a serious medical need requiring care. The same can be said for C/O Crumin, C/O Boyer and Lt. Ginder, who escorted Plaintiff to segregation. The vague assertions that Dr. Coe, and *possibly* a nurse, denied Plaintiff medical care are also insufficient under the *Twombly* pleading standard to state a claim. The bald and confusing assertion that Wexford Health Services, along with "the HCCA, Don, as well," are liable under the Eighth Amendment is also insufficient to state a claim. Accordingly, all Eighth Amendment claims about the denial of medical care will be dismissed without prejudice. Because there are no other claims asserted against Dr. Coe and Wexford Health Sources, they will be dismissed as defendants—again, without prejudice.

### The False Disciplinary Report and Placement in Segregation

It is alleged that Lt. Ginder issued Plaintiff a false disciplinary report after the June 4 2015 incident. The fact that Plaintiff may have been issued a false disciplinary ticket, without more, does not give rise to a Fourteenth Amendment claim. This is because "due process safeguards associated with prison disciplinary proceedings are sufficient to guard against potential abuses[,] [and a] hearing before a presumably impartial Adjustment Committee terminates an officer's possible liability for the filing of an allegedly false disciplinary report." *Hadley v. Peters*, 841 F. Supp. 850, 856 (C.D. Ill. 1994), aff'd, 70 F.3d 117 (7th Cir.1995) (citations omitted).

The complaint does not suggest any other viable due process claim. For purposes of triggering due process protections, an inmate has a liberty interest in

avoiding placement in more restrictive conditions, like segregation, when the conditions "pose an atypical and significant hardship when compared to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 483–84 (1995). But "inmates have no liberty interest in avoiding transfer to discretionary segregation-that is, segregation imposed for administrative, protective, or investigative purposes." *Id.* (citing *Lekas v. Briley,* 405 F.3d 602, 608–09 n. 4 (7th Cir. 2005) ("[R]eassignment from the general population to discretionary segregation does not constitute a deprivation of a liberty interest.")); *Crowder v. True,* 74 F.3d 812, 815 (7th Cir. 1996). This is because discretionary, or administrative, segregation is not considered "atypical," but rather an "ordinary incident of prison life" that prisoners should anticipate during their time in prison. *Townsend v. Fuchs,* 522 F.3d 765, 771 (7th Cir. 2008).

Here, the complaint only mentions that Plaintiff was taken to segregation *before* being issued a disciplinary report (suggesting administrative segregation) and makes no mention of the conditions in segregation. Consequently, the *Twombly* pleading standard has not been met and any and all Fourteenth Amendment due process claims regarding the disciplinary ticket and placement in segregation should be considered dismissed without prejudice.

### Administrative Grievances

It is alleged that Counselor Ray threw some of Plaintiff's grievances away and otherwise threatened and dissuaded him from exhausting administrative remedies. Insofar as the complaint appears to focus on Plaintiff's efforts to exhaust administrative remedies, that does not amount to blocking access to the courts for purposes of a First

Amendment claim. Section 1997e(a) only requires the exhaustion of "available" administrative remedies. If the administrative grievance process is rendered unavailable by prison officials, as Plaintiff appears to be alleging, the exhaustion requirement is satisfied and there is no impediment to filing suit. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

Furthermore, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson,* 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith,* 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996). "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli*, 81 F.3d at 1430. The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, by itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich,* 681 F.2d 1091, 1100–01 (7th Cir. 1982). Because the allegations regarding Defendant Ray and the handling of Plaintiff's grievances are so jumbled and vague (*see* Doc. 1, p. 14, ¶ 27), any and all claims regarding Ray and Plaintiff's grievances are dismissed without prejudice.

### **Supervisor Liability**

The complaint describes each of the defendants as having a duty to enforce or carry out prison rules and policies, and ensure that the Constitution is not violated (*see* Doc. 1, pp. 10-13). As already noted, Section 1983 creates a cause of action based on personal liability and predicated upon fault. The broad assertion that all of the defendants, as state actors, are liable is not sufficient to make out a claim.

With respect to those who occupy supervisory positions, the doctrine of *respondeat superior*—supervisor liability—is not applicable to Section 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Thus, the mere fact that a defendant occupies a supervisory position is insufficient for liability to attach. The one very specific allegation that Lt. Ginder is liable for the attack because he supervises segregation fails because no personal involvement by Ginder in the assault is alleged—and the assault did not even occur in segregation.

Allegations that senior officials were personally responsible for creating the policies, practices and customs that caused a constitutional deprivation can suffice to demonstrate personal involvement for purposes of Section 1983 liability. *See Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 615 (7th Cir. 2002). The complaint, however, only offers a bald assertion that there were policies and practices, but there is no suggestion regarding what those policies and practices are, and/or who created them.

As has been discussed, the majority of allegations within the complaint lack the minimal amount of detail necessary to make out claims, which is something Plaintiff

can presumably cure. Therefore, the claim against Lt. Ginder and any and all intended claims based on supervisory liability are dismissed without prejudice.

## Excessive Force

Having separated the wheat from the chaff, Plaintiff is left with his Eighth Amendment claim that C/O Rex Fitch, C/O Boyer, C/O Crumin, C/O Weber and Lt. Dellinger violated his Eighth Amendment rights in connection with the assault that occurred in Plaintiff's cell. The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Hudson v. McMillian*, 503 U.S.1, 6 (1992)). *See also Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). Accordingly, the allegation that C/O Fitch, without provocation, assaulted Plaintiff states a colorable Eighth Amendment claim.

Relative to C/O Boyer, C/O Crumin, C/O Weber and Lt. Dellinger, under certain circumstances "a state actor's failure to intervene renders him or her culpable under [Section] 1983." *Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir. 1994). An inmate asserting a failure to intervene claim under Section 1983 against officers who were present when the inmate's constitutional rights were violated by a different officer, must show that the officers had reason to know that excessive force was being used, and the officers had a "realistic opportunity to intervene to prevent the harm from occurring." *Abdullahi v. City of Madison,* 324 F.3d 763, 774 (7th Cir. 2005) (quoting *Yang*

*v. Hardin,* 37 F.3d 282, 284 (7th Cir. 1994)).  According to the complaint, Boyer, Crumin, Weber and Dellinger witnessed the incident involving Fitch, but just stood by, even as Plaintiff called for assistance.  Thus, an Eighth Amendment "failure to intervene" claim has been stated against these defendants.  The Eighth Amendment claims against Fitch, Boyer, Crumin, Weber and Dellinger shall proceed as "Count 1."  Because no colorable claims have been stated against Defendants Ray, Lt. Ginder, Dr. James Coe and Wexford Health Services, they shall be dismissed as defendants to this action; dismissal shall be without prejudice.

### Disposition

IT IS HEREBY ORDERED that, for the reasons stated, Defendants **COUNSELOR RAY, MS. SMITH, LT. GINDER, NURSE JANE DOE #1, DR. JAMES COE, WEXFORD HEALTH SERVICES and D. JOHNSON** are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that any and all conspiracy allegations, due process claims regarding personal property, Eighth Amendment claims regarding healthcare, as well as claims regarding a false disciplinary report, placement in segregation, grievances, and supervisory liability, are all **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 1,** the Eighth Amendment claim regarding Plaintiff being physically assaulted, shall otherwise **PROCEED** against Defendants **C/O REX FITCH, C/O BOYER, C/O CRUMIN, C/O WEBER and LT. G. DELLINGER**.

The Clerk of Court shall prepare for Defendants **C/O REX FITCH, C/O BOYER,**

**C/O CRUMIN, C/O WEBER and LT. G. DELLINGER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. Consequently, Plaintiff's motion for service of process at government expense (Doc. 4) is **DENIED AS MOOT**.

If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge

that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Philip M. Frazier** for further pre-trial proceedings, including consideration of Plaintiff's motion for counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* may have been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the

Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: December 29, 2015**

                                                            <u>s/ STACI M. YANDLE</u>
                                                            **United States District Judge**